## STATE OF VERMONT
## ENVIRONMENTAL COURT

|                                    |   |                          |
|------------------------------------|---|--------------------------|
| **In re: Bedard PRD/Subdivision**  | } | **Docket No. 104-5-07 Vtec** |
| **Sketch Plan Application (17 Lots)** | } |                          |

## Judgment Order

This appeal was taken from a denial by the Town of Hinesburg Development Review Board ("DRB") of an application by George and Janis Bedard ("Applicants") for sketch plan approval of a 17-lot, 16-unit planned residential development ("PRD") and subdivision of their 52.5± acre parcel on the south side of Texas Hill Road in Hinesburg.

After the timely filing of this appeal, Applicants requested that these proceedings be stayed so that they could pursue approval of a revised subdivision and development plan. The Court thereafter approved Applicants' stay request. See Entry Order of August 2, 2007. Applicants ultimately received approval for a conventional, 8-lot subdivision, but they were dissatisfied with the conditions imposed upon that conventional subdivision approval.[1] They therefore sought a reopening of this appeal of their original 17-lot PRD and subdivision sketch plan application (Docket 104-5-07 Vtec), which the Court granted. See Entry Order of November 7, 2008. This matter thereafter proceeded to summary judgment review and trial.

The Court denied Applicants' request for summary judgment. See Entry Order dated October 6, 2009. The matter thereafter proceeded to a site visit and trial on October 14, 2009, at the Costello Courthouse in Burlington. The site visit aided the Court by providing context to the evidence that was admitted at trial.

Applicants presented the following three legal issues for the Court's consideration in their Restated Statement of Questions, filed on October 14, 2009:

1. Does the proposed PRD satisfy the density requirements for its zoning district?

2. Does the proposed PRD provide a reasonable clustering, given its setting and surroundings, so as to conform to § 4.5.7(2) of the Town of Hinesburg Subdivision Regulations ("Subdivision Regulations")?

---

[1] Applicants' conventional subdivision application was briefly the subject of an appeal before this Court. See In re Bedard PRD/Subdivision (12 lot), No. 255-11-07 Vtec. Their PRD application was initially denied by the DRB on November 6, 2007, but the DRB granted sketch plan approval for a revised 8-lot conventional subdivision, with conditions, on June 17, 2008.

3. Will the proposed PRD conform to the applicable provisions of the Subdivision Regulations, the Town of Hinesburg Zoning Regulations ("Zoning Regulations"), and the Town of Hinesburg Town Plan ("Town Plan") relating to traffic and access for emergency and school services?

At the conclusion of the merits hearing, the Court deliberated and then announced partial Findings of Fact and Conclusions of Law on the record of that hearing. Specifically, the Court concluded that an alternate subdivision proposal, presented by Applicants during trial and evidenced by their Exhibit 2, provided sufficient evidence that a conventional subdivision of their property could contain at least thirteen lots and conform to the minimum lot size requirements for properties in the Rural Residential Zoning District II ("RR II District"), such as Applicants' property. See Zoning Regulations § 2.4 and tbl.1 (specifying three acres as the minimum lot size for RR II District properties). The Court also announced its conclusion that in all respects, other than the question of project density, Applicants' PRD proposal "respects both the purpose and specific regulatory provisions of the Zoning Regulations, the Subdivision Regulations, and Town Plan."

The Court then requested that the parties submit post-trial legal memoranda on the legal issue of whether this specific PRD conforms to the RR II District's density requirements. The Court has reviewed those memoranda, conducted its own research, and does hereby announce its determinations on this final legal issue.

Planned residential developments are permitted in Hinesburg to "allow for innovative and flexible design and development that will promote the most appropriate use of land, and specifically achieve one or more" of five stated objectives. Zoning Regulations § 4.5.1. Applicants' proposed PRD appears to accomplish at least one of these objectives by clustering its development onto sixteen undersized lots, which range in size from less than one acre to about one and a half acres. This clustering occurs, by apparent necessity, on the less steep slopes of Applicants' property, as is evidenced by Applicants' Exhibit 1. The configuration of the PRD lots also appears to have been influenced by certain wet areas on Applicants' property.

"Clustering" is a term not specifically defined in the Zoning or Subdivision Regulations, but Applicants' PRD provides an example of the term's common definition: "a group of buildings and especially houses built close together on a sizeable tract in order to preserve open spaces larger than the individual yard for common recreation." Merriam-Webster's Collegiate Dictionary 218 (10th ed. 1998). Applicants' PRD clusters the maximum number of home sites

2

allowed on this parcel under the minimum lot size provisions, and it groups those home sites on adjoining, undersized lots, thereby allowing for all the remaining 38± acres to be held in a single lot that Applicants propose to remain undeveloped. Preexisting forest land is less fragmented, and wildlife habitat may be less impacted, under Applicants' proposed PRD than would result from a conventional subdivision, which fulfills one of the specifically stated goals of Zoning Regulations § 4.5.1(1). However, due to the density of clustering, we conclude that Applicants' proposed PRD conflicts with the remaining applicable provisions of the Zoning and Subdivision Regulations.

All Hinesburg subdivisions, including those structured as a PRD, must satisfy certain planning standards. See Subdivision Regulations, art. 5. These standards include provisions relating to the suitability of the land for development, protection of natural features, and compatibility with its surroundings. Subdivision Regulations §§ 5.1.1, 5.1.2, and 5.1.5. Much of the trial testimony concerned whether the proposed development was compatible with the existing area settlements. The evidence presented leads us to conclude that it is not. The denseness of this development, and the size of its proposed lots, does not conform to any established uses in this region of the RR II District.

The stated purpose of the RR II District is to "allow low density, rural residential development in a relatively remote area with no access to public sewer and water services." Zoning Regulations § 3.3. The section of Texas Hill Road where Applicants' PRD is proposed provides an example of existing development patterns that conform to this stated purpose. Only forty-three residences exist within a half-mile radius of the proposed PRD, which equates to an average lot size of nine acres per home, even after excluding the undeveloped tracts of land within that radius. Most of the home sites proposed in Applicants' PRD are not much larger than one acre; several are less than an acre. Applicants' proposed PRD, if it obtained full permit approval and was fully developed, would result in a nearly forty-percent increase in the homes within this rural neighborhood of one mile in diameter. The proposed PRD would bring an intensity and denseness of development to this neighborhood that does not yet exist and is not encouraged by the Town Plan, Zoning Regulations, or Subdivision Regulations. As the Town aptly described, the consequence of such a significant increase would leave this neighborhood with "all the inconveniences of its remote location without the advantage of its tranquility." Appellee's Post-Trial Memorandum at 3.

3

The Zoning Regulations direct that a PRD must conform to certain general and specific standards, including consistency with the Town Plan and maintenance of the RR II District's "rural character and historic working landscape, characterized by wooded hillsides and knolls, open fields, and a visual and functional relationship of structures to the surrounding landscape." Zoning Regulations § 4.5.7(4)(a). Applicants' PRD brings an intensity of clustered development that does not exist in this neighborhood. In fact, no evidence was provided that a clustered development of this denseness exists in the RR II District.

The most credible evidence and arguments presented convinced us that a clustered development of this intensity would conform to the Town Plan goals, were it sited in the Village area, but it does not conform when sited in this rural neighborhood. Compare Town Plan § 3.2.5 (speaking to growth and development in the Village area) with Town Plan § 3.4.1 (seeking to guide residential development into locations and groupings that preserve the sense of open space as well as the agricultural and forestry usefulness of the RR I and RR II Districts).

For all these reasons, we conclude that Applicants' proposed PRD provides a clustering and denseness of development that conflicts with the applicable provisions of the Zoning Regulations, Subdivision Regulations, and Town Plan. Therefore, we conclude that Applicants' PRD must be **DENIED** sketch plan review approval under Subdivision Regulations § 3.1.

This completes the current proceedings before this Court concerning this application.

Done at Newfane, Vermont this 9th day of April, 2010.

_____
Thomas S. Durkin, Environmental Judge

4